**In re WORLDCOM, INC. SECURITIES LITIGATION.**

**This Document Relates to: All Actions.**

**No. 02 Civ. 3288(DLC).**

United States District Court, S.D. New York.

Sept. 15, 2006.

Kenneth Pasquale, Stroock & Stroock & Lavan LLP, New York, NY, for Movant GSC Parters.

Max Berger, John Coffey, Steven Singer, Bernstein Litowitz Berger & Grossman LLP, New York, NY, Leonard Barrack, Gerald Rodos, Jeffrey Golan, Philadelphia, PA, for Lead Plaintiff, Alan G. Hevesi.

### OPINION AND ORDER

COTE, District Judge.

GSC Partners ("GSC"), seeks court approval of its effort to revoke its prior request for exclusion from the class action brought against defendants related to WorldCom Inc. ("WorldCom"). Its application is denied as untimely.

*Background*

The framework in which this application is brought is as follows. On June 25, 2002, WorldCom announced a massive restatement of its financials. Class actions had preceded and followed this announcement. They were

consolidated on August 15, 2002, and a consolidated class action complaint was filed on October 11, 2002. The defendants' motions to dismiss were largely denied on May 19, 2003, and a class was certified on October 24, 2003. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 307 (S.D.N.Y.2003). The notice of the class action was mailed to the class in December. It set an opt-out deadline of February 20, 2004. GSC opted out on February 19, 2004.

Meanwhile, many individuals and entities filed individual actions ("Individual Actions"). Those filed in state court were removed by defendants and transferred to this Court by the Judicial Panel on Multi–District Litigation. In early February 2004, the Court of Appeals for the Second Circuit suspended the close of the opt-out period pending a ruling on an appeal filed by Individual Actions seeking a remand to state court. *See In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288(DLC), 2004 WL 2591402, *5 (Nov. 12, 2004).

On May 10, 2004, on the eve of oral argument before the Second Circuit of a separate appeal—the appeal from the decision certifying the class action—the Citigroup defendants [1] settled with the class for $2.65 billion, subject to reduction based on the level of opt outs from the class. Following the Second Circuit's affirmance of this Court's Opinion on the remand issues, the opt-out deadline from the class action was reset for September 1, 2004. An early August notice advised class members of the Citigroup defendants' settlement and allowed those who had previously opted out the opportunity to revoke their request for exclusion and to rejoin the class so long as they did so by September 1, 2004. *See id.* at *5, *8. GSC did not rejoin the class.

On September 15, the Lead Plaintiff for the class action was given permission to inquire of class members who had filed claim forms as well as requests to opt out whether or not they wished to remain in the class. Since GSC had not filed a claim, no inquiry

was made regarding GSC's request to opt out.

The Lead Plaintiff and the Citigroup defendants reached agreement on October 22 regarding the amount by which the $2.65 billion settlement agreement would be reduced. Based on the evaluation of the securities held by those who had opted out of the class, they agreed that the Citigroup defendants would pay $75 million less. On November 12, 2004, the Court approved a payment of $2.575 billion by the Citigroup defendants to settle the class action. *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, *1.

In an Opinion of December 15, 2004, the motions for summary judgment filed by the Underwriter defendants in the class action were largely denied. *See In re WorldCom, Inc. Sec. Litig.*, 346 F.Supp.2d 628 (S.D.N.Y. 2004). Between March 2 and March 16, 2005, the Underwriter defendants settled with the class for an aggregate amount of over $2 billion. The settlement was pegged to amounts the Citigroup defendants had paid to settle class claims. *In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288(DLC), 2005 WL 2319118, *5–6 (S.D.N.Y. Sept. 21, 2005). As of that time, the class action trial was scheduled to begin March 23.

On January 18 and March 21, 2005, motions for summary judgment by WorldCom's auditor Arthur Andersen and one of its directors were denied. By March 21, the WorldCom Director defendants had settled with the class for $60.75 million. *See In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319, 329 (S.D.N.Y.2005). With these settlements, Andersen was the only remaining defendant in the class action. Andersen had essentially gone out of business in 2002, and had limited assets to settle or pay judgments in the many actions that had been filed against it. It settled with the class in the fifth week of trial in April 2005, agreeing to pay essentially $65 million. *Id.* at 332.

On March 25, 2005, within days of the class settlement with the Director defendants, GSC filed six proof of claim forms and a

---

**1.** The terms and references in this Opinion are those customarily used in Opinions in the WorldCom Securities Litigation. *See, e.g., In re World-* *Com, Inc. Sec. Litig.*, 2004 WL 2591402; *In re WorldCom, Inc. Sec. Litig.*, 294 F.Supp.2d 392 (S.D.N.Y.2003).

letter advising the Administrator for the settlement that it was revoking its February 19, 2004 request to be excluded from the class. The letter from GSC's counsel added,

> We and GSC Partners recognize that these Proofs of Claim, and this revocation, have been submitted beyond the dates set forth in the respective class notices. However, because GSC Partners collectively holds a significant amount of bonds (as demonstrated by the Proofs of Claim), it is in the best interests of all parties to this litigation to resolve all issues through the class action settlement. Our request is consistent with the Court's order dated March 9, 2005 that, *inter alia,* deemed effective certain late-filed revocations of earlier requests for exclusion from the class. *See In re World-Com, Inc. Securities Litigation,* 2005 WL 550470 (S.D.N.Y.2005). We therefore respectfully request that GSC Partners' revocation, and the respective Proofs of Claim, be accepted at this time.

When the administrator processed these forms approximately eight months later it determined that the "Recognized Amounts" of the claims were about $30 million if deficiencies in the claims were cured.

The March 9, 2005 Order to which GSC referred in its letter to the Administrator was entered in connection with the settlement with the Citigroup defendants, and addressed which persons and entities were excluded from the class by operation of the final judgment entered following the approval of that settlement. *See In re WorldCom, Inc. Sec. Litig.,* 02 Civ. 3288(DLC), 2005 WL 550470 (S.D.N.Y. Mar. 9, 2005) ("March 9 Order"). Attached as Exhibit A was a "final list" of the 14,220 persons and entities who were excluded from the class. *Id.* at *1. GSC entities were on that list. The Order allowed the 468 persons who had filed both a request for exclusion and claim form prior to September 1, 2004, and who had confirmed their request to rejoin the class by returning a letter approved through the September 15, 2004 Order to rejoin the class. *Id.*

The requests of 105 persons to opt out of the class that were postmarked after September 1, 2004 were denied. *Id.* The Lead Plaintiff was ordered to provide them with notice of that decision and an opportunity to file a proof of claim. *Id.* Finally, sixty-seven class members that had sought to revoke their requests for exclusion but whose revocation notices were postmarked after September 1, 2004 were deemed members of the class. *Id.* at *2. Twelve of the sixty-seven were submitted in 2005. The last one was postmarked February 19, 2005.

An Order of June 14, 2005 set September 9, 2005 as the date of the Fairness Hearing on the 2005 WorldCom class action settlements, permitted class members to filed objections up until August 12, 2005, and extended the time to file proofs of claim until August 26, 2005. The Order authorized notice to the class of these events as well as a supplemental plan of allocation for disbursement of all settlement funds received in the class action litigation to eligible class members. The Order required the Administrator to preserve all communications with the class, including "Proofs of Claim, Requests for Exclusion, Requests for Revocation of Exclusion, and all other written communications from Class Members." The Order did not set a new opt-out date or grant any further opportunity to a class member to revoke an exclusion.

As noted, by late 2005, the Administrator had processed the six GSC claims and determined that each was deficient in some manner. In early 2006, the Administrator conducted an audit of exclusion requests and claims. On April 26, 2006, it sent to Lead Plaintiff a report of claims that were matched to a "valid exclusion request." The Administrator also intends to report for which of these claims there was an untimely request to revoke the opt-out notice. On April 6, 2006, the Administrator advised GSC that it viewed GSC's claims as ineligible due to its February 19, 2004 request for exclusion. On April 13, GSC filed this motion. Through an Order of April 14, the Lead Plaintiff was given an opportunity to respond to the motion. The Lead Plaintiff opposes the GSC request to revoke its withdrawal from the class. In response to a request from the Court, the Lead Plaintiff recently provided the postmark dates for the sixty-seven class members who were permitted by

the March 9 Order to revoke their prior opt-out requests despite missing the September 1, 2004 deadline.

*Discussion*

█ GSC seeks permission to revoke its exclusion from the class. GSC opted out of the class in February 2004, and did not send the Administrator notice of a desire to rejoin the class until March 2005. Although class members had been given an opportunity to revoke their exclusions, that window of opportunity closed officially on September 1, 2004, and only those class members who acted to revoke their exclusion notices prior to February 19, 2005 have been permitted to rejoin the class. In contrast, GSC waited over six months following September 1, 2004, to contact the Administrator and attempt to revoke its exclusion, and acted only after the class had achieved historic settlements with all the deep-pocket defendants.

GSC does not contend that its untimely application can be justified by excusable neglect. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *In re WorldCom, Inc. Sec. Litig.,* 02 Civ. 3288(DLC), 2005 WL 1048073, *6 (discussing *Pioneer* standard and opt outs). Instead, it simply reports that unexplained "business reasons" and the "additional settlements" achieved by the Lead Plaintiff prompted its change of heart.

GSC's application is denied. The management of a class action, particularly one as sprawling and substantial as the WorldCom class action, requires a Court to set an appropriate and clear schedule for the litigation and to enforce the deadlines to which the parties have been required to adhere. This permits the litigation to move forward, promotes respect for the judicial process, and allows the parties to plot their litigation strategy efficiently. If the parties cannot rely on the schedule, then they waste resources preparing for an unknown or uncertain future.

In this case, the parties knew many months in advance when discovery would end, when motions were due, and when the trial would begin. Class members were given deadlines to opt out, to revoke those opt outs, and to file proofs of claim. For good cause, the deadlines were modified, but generally, those modifications made only minor adjustments in the schedule. The Lead Plaintiff petitioned for approval of all requests to rejoin the class for a substantial time period following the September 1, 2004 cut-off date, but has opposed requests that came after the March 9 Order was issued, and as significantly, after the announcement of the 2005 settlements. Its position is reasonable.

The class was given clear and fair notice of the deadline to revoke exclusion from the class and GSC does not contend otherwise. It is a sophisticated investor and has provided no reasonable justification for its failure to adhere to the deadline.

The WorldCom *Securities Litigation* was unusual in several respects, one of them being the number of opt outs from the class. This appears attributable to at least two phenomena. Because there were two enormous bond offerings worth about $17 billion underwritten by 17 investment banks, and large institutional investors who had purchased those bonds, some plaintiff's counsel solicited investors to file Individual Actions and try to win a more favorable recovery from the banks. *See In re WorldCom, Inc. Sec. Litig.,* 2003 WL 22701241, *5 (S.D.N.Y., Nov.17, 2003). Secondly, the lead underwriter for the two bond offerings, Citigroup affiliate Salomon Smith Barney ("SSB"), was sued as well on a Section 10(b) Exchange Act securities fraud claim due to the activities of its star telecommunications analyst Jack Grubman and his role in touting WorldCom stock. With the extension of the opt-out deadline from February 20 to September 1, 2004, attorneys had additional time to convince investors in WorldCom stock who had SSB accounts to opt out and pursue claims in arbitration against SSB.

When the Lead Plaintiff and the Citigroup defendants settled in May 2004 they did not know the extent to which class members would opt out, since the opt-out deadline of February 20, 2004 had been vacated. As a result they agreed on a maximum settlement figure and a procedure for reducing that

figure once the scope of the opt outs became known. Following the close of the opt-out period on September 1, 2004, they analyzed the situation and negotiated a reduction. When the Underwriter defendants settled with the class in early 2005, their payments were calibrated against the Citigroup settlement.

As this summary illustrates, all class members and defendants have relied on the schedule set in this litigation. GSC decided in early 2004 that it would strike out on its own and leave the class. In light of the historic settlements reached by the Underwriter defendants, settlements which will achieve impressive recoveries particularly for WorldCom bondholders, GSC changed its mind. *See In re WorldCom, Inc. Sec. Litig.,* 02 Civ. 3288(DLC), 2005 WL 613107 (S.D.N.Y. Mar. 15, 2005). That change of mind comes too late and without good cause. Its request is denied.

GSC contends that the Court has "inherent authority" in the management of this class action and should exercise equitable powers to grant GSC's application since that will avoid GSC having to consider whether to file its own indemnification action. For the reasons already explained, enforcement of the September 1, 2004 deadline is important. GSC itself relied on an opt-out deadline when it filed its request for exclusion. It would have been entirely justified in relying on that timely exclusion in filing its own separate litigation. Class members who hope to recover from the class action settlements and who saw the amount of recovery reduced by the volume of opt outs have a concommitant right to expect reasonable enforcement of the September 1, 2004 deadline for revocation of an exclusion.

■ GSC next argues that the June 14, 2005 Order implicitly extended the time for revocation of an exclusion request when it extended the time to submit claim forms and required the Administrator to preserve Requests for Exclusion. GSC's reliance on the June 14, 2005 Order is futile. First, the Order did not alter the deadline for revocation of an exclusion. Because it addressed, *inter alia*, the claim administration process for the entirety of the WorldCom class ac-

tion, and the allocation of all settlement funds, it reiterated the duty of the Administrator to preserve all relevant communications, a duty that was first articulated in the Order of July 16, 2004 which gave preliminary approval of the settlement with the Citigroup defendants. More significantly, the June 14, 2005 Order approved notices to the class of the additional settlements and the supplemental plan of allocation. Nothing in those notices suggested that class members had any further opportunity to revoke their exclusions. In the summer of 2004, the Court had required the Lead Plaintiff to write to every class member to advise them of their opportunity to revoke exclusion by September 1, 2004. There was no similar instruction in the June 14, 2005 Order. In sum, the Order provides no support for GSC's request.

Finally, *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 246 F.3d 315 (3d Cir. 2001), provides no solace to GSC. Among other things, the claimant there advanced a meritorious excusable neglect argument; GSC does not contend that it can prevail on this application under that standard.

*Conclusion*

GSC's application to revoke its exclusion from the class is denied.

SO ORDERED.